UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| A.M., )<br>          Petitioner )<br>      )<br>    v. )<br>      )<br>KEVIN JOYCE, Sheriff, Cumberland )<br>County, et al., )<br>      )<br>          Respondents ) | No. 2:25-cv-00615-LEW |

## ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Before the Court is Petitioner A.M.'s Petition for Writ of Habeas Corpus (ECF No. 1) and Emergency Motion for a Temporary Restraining Order and Preliminary Injunction (ECF No. 3). Petitioner seeks release from immigration detention. Federal Respondents oppose the Petition. For the following reasons, the Petition and Motion are denied without a hearing.[1]

## BACKGROUND

The following background statement is drawn from the Petition, the Return and Response, and exhibits introduced in support of those filings.

---

[1] Neither party has requested a hearing. *See also Tijerina v. Thornburgh*, 884 F.2d 861, 866 (5th Cir. 1989) (finding that although 28 U.S.C. § 2243 requires the court to "summarily hear and determine the facts," the court need not hold an evidentiary hearing "[w]here the [habeas] petitioner raises only questions of law, or questions regarding the legal implications of undisputed facts") (collecting case).

Petitioner A.M. is a citizen and national of Afghanistan. Petitioner's presence in the United States is the product of his service to the United States in military missions in Afghanistan and an approval issued by the U.S. Government's Chief of Mission in Afghanistan and an associated Special Immigrant Visa ("SIV"). Pet. Ex. D. (ECF No. 1-4). *See* Afghan Allies Protection Act of 2009 ("AAPA"), Pub. L. No. 111-8, § 602(a), 123 Stat. 807 (2009), *codified as amended in* 8 U.S.C. § 1101 note. The Notice of Action (Form I-797) associated with the SIV states that the SIV "does not in itself grant any immigration status and does not guarantee that the alien beneficiary will subsequently be found to be eligible for a visa, for admission to the United States, or for an extension, change, or adjustment of status." *Id.* In other words, despite his SIV status, Petitioner has never been "admitted" to the United States. Instead, after vetting, Petitioner was paroled into the United States under 8 U.S.C. § 1182(d)(5) (INA § 212(d)(5)). Pet. ¶ 20.[2] Petitioner's initial parole period was two years, which was extended by administrative action until September 6, 2025. *Id.*

When brought to the United States, Petitioner was accompanied by a woman understood to be his spouse and nine children. They have lived in the Boston area for roughly four years. Since their arrival, the family has added two more children.

In October 2023, Petitioner applied for lawful permanent resident status. On September 8, 2025, after the conduct of a variety of procedural measures, U.S. Citizenship and Immigration Services ("USCIS") issued a Notice of Decision informing Petitioner that

---

[2] Petitioner has not alleged or demonstrated that his receipt of the SIV was an admission event or was the equivalent of admission.

his application was denied based on certain adverse findings. Gov't Ex. 2. Also on September 8, 2025, USCIS issued to Petitioner by mail a Notice to Appear before an immigration judge in Boston on February 3, 2026, in connection with removal proceedings. Pet. Ex. E; Gov't Ex. 3.

On December 5, 2025, an immigration officer signed a warrant for arrest of alien, directing "[a]ny immigration officer authorized pursuant to sections 236 and 287 of the Immigration and Nationality Act and part 287 of title 8, Code of Federal Regulations," to arrest Petitioner based on probable cause that Petitioner is "removable." Gov't Ex. 4. Petitioner was arrested that day and has been detained ever since. Pet. ¶¶ 4, 5, 24.

On December 11, 2025, Petitioner filed for habeas corpus relief pursuant to 28 U.S.C. § 2241. Following receipt of the Verified Petition, the Court issued an Order to Show Cause that directed the Respondents to address the merits of the Petition. *See* 28 U.S.C. § 2243. Federal Respondents filed their timely Return and Response and Petitioner has filed his Reply. Neither party has suggested the need for an evidentiary presentation in this matter. Instead, they present only legal argument in support of their respective positions.

## DISCUSSION

A court may grant a writ of habeas corpus to a petitioner who demonstrates his or her detention is in violation of the constitution or federal law. 28 U.S.C. § 2241. The

petitioner bears the burden of proving that his detention violates "the Constitution or laws or treaties of the United States." *Id.* § 2241(c)(3). [3]

Petitioner alleges that his recent arrest and ongoing detention violate the Due Process Clause because the arrest did not occur "forthwith" following the expiration of his parole and he is, therefore, entitled to a bond hearing. Pet., Count I. Petitioner also alleges that he is held in violation of the Equal Protection Clause because he is detained based on the President's negative statements concerning Afghanistan and aliens of Afghan origin. *Id.*, Count II. Petitioner requests immediate release.

**A.   Due Process**

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. am. V. The Fifth Amendment applies to aliens facing removal proceedings. *Reno v. Flores*, 507 U.S. 292, 306 (1993). In *Hernandez-Lara v. Lyons*, the First Circuit held that "due process requires the government to either (1) prove by clear and convincing evidence that [an alien] poses a danger to the community or (2) prove by the preponderance of the evidence that she poses a flight risk" in order to impose detention throughout the period of removal proceedings, including appeals. 10 F.4th 19, 41 (1st Cir. 2021). The *Hernandez-Lara* requirement

---

[3] The exercise of jurisdiction over this matter is proper because it presents a challenge to the lawfulness of detention and is not meant to review or interfere with the underlying removal proceedings. *Demore v. Kim*, 538 U.S. 510, 516-17 (2003) (hearing habeas claim because it challenged the "statutory framework that permits detention without bail" rather than an exercise of discretion by the Secretary); *Kong v. United States*, 62 F.4th 608, 614 (1st Cir. 2023) (quoting Aguilar, 510 F.3d at 11); *Hernandez-Lara v. Lyons*, 10 F.4th 19, 33 (1st Cir. 2021) (same, "cabin[ing] the discretion granted [to the Attorney General] through the constitutional restraints applicable to all government action," while preserving the Attorney General's ability to exercise discretion "within those limits").

rested on a *Mathews v. Eldridge* due process analysis for a non-criminal alien who unlawfully entered the United States without being processed at the border. *Id.* at 27-35.

Petitioner argues that he is entitled to a *Hernandez-Lara* hearing because of his SIV status and his years living in this country, and because of the needs of his dependent family members. He also argues that he is entitled to a *Hernandez-Lara* hearing because he was not detained "forthwith" upon expiration of his parole under 8 U.S.C. § 1182(d)(5)(A) and because the warrant for his arrest references INA § 236, *i.e.*, 8 U.S.C. § 1226. The Federal Respondents disagree, observing that Petitioner has always been subject to a special parole status that makes his parole a function of administrative discretion. They argue that Petitioner falls into a mandatory detention "catchall" category under 8 U.S.C. § 1225(b)(2) and, consequently, can only be rereleased on parole if the Immigration and Naturalization Service decides to grant him further parole pursuant to 8 U.S.C. § 1182(d)(5)(A). Alternatively, they argue that in any event an order of release would be improper since Petitioner should be detained pending an assessment of whether he should be paroled under 8 U.S.C. § 1226.

The Immigration and Nationality Act addresses the need for and parameters governing alien detention in two primary places, 8 U.S.C. § 1225 and 8 U.S.C. § 1226. Section 1225 is entitled "Inspection by immigration officers; expedited removal of inadmissible arriving aliens; referral for hearing." Under subsection (a), "Inspection," "[a]n alien present in the United States who has not been admitted or who arrives in the United States . . . shall be deemed for purposes of [INA Chapter 12] an applicant for admission." 8 U.S.C. § 1225(a)(1). All such aliens "shall be inspected by immigration

officers." *Id.* § 1225(a)(3). Under subsection (b), "Inspection of applicants for admission," aliens arriving in the United States are subject to expedited removal without a hearing, if they are determined to be inadmissible under certain INA sections not applicable here and lack a proper basis to seek asylum in the United States. *Id.* § 1225(b)(1)(A), (B). The remainder, those who are "not clearly and beyond a doubt entitled to be admitted," are subject to removal and ongoing detention pending the removal proceedings. *Id.* § 1225(b)(2)(A). In effect, pursuant to section 1225, all arriving aliens who are inspected and determined to not be entitled to admission are subject to ongoing detention pending removal from the United States. "[A]n alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982).

Despite the foregoing restrictions, members of either class of arriving alien lacking an entitlement to admission can be, and often are, paroled from detention or custody, on a case-by-case basis, "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). However, such parole is not equated with "admission." *Id.*; *see also*, *generally*, *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018). Moreover, section 1182(d)(5)(A) parole, upon expiration, returns the alien to the condition of an alien seeking admission at the border who is subject to detention. *Id.* ("[S]uch parole of such alien shall not be regarded as an admission … and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled …."). Thus, although both

of the section 1225 categories for arriving aliens anticipate the presence of an "immigration officer" presently engaged in "inspecting" and "screening" an alien and an alien who is presently "seeking admission," 8 U.S.C. §§ 1225(a)(1), (3), (5) & 1225(b)(1)(A), (2)(A), section 1182(d)(5)(A) allows even aliens who have achieved an entry into the United States to be treated as arriving aliens seeking admission from immigration authorities.

In contrast to section 1225, section 1226 is entitled "Apprehension and detention of aliens." 8 U.S.C. § 1226. It states that "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." *Id.* § 1226(a). Some aliens subject to section 1226 will have been previously admitted following inspection under section 1225, while others will have entered the United States surreptitiously, without inspection. Unlike section 1225, section 1226 anticipates a situation in which the Attorney General arrests and detains an alien at liberty in the United States and authorizes an exercise of discretion in terms of whether the alien will be detained during the pendency of removal proceedings or released on bond or conditional release, *id.* § 1226(a)(2).[4] The Attorney General's exercise of discretion under § 1226(a)(2) is not subject to judicial review, *id.* § 1226(e), but a refusal to exercise the discretion by not holding a hearing to evaluate a bond or conditional release request is. *Brito v. Garland*, 22 F.4th 240, 244 (1st Cir. 2021); *Hernandez-Lara v. Lyons*, 10 F.4th 19 (1st Cir. 2021); *see also* 8 C.F.R. § 236.1(d)(1) (2025).

---

[4] Detention is mandatory for certain "criminal aliens." 8 U.S.C. § 1226(c).

In summary, the INA "authorizes the Government to detain certain aliens seeking admission into the country under §§ 1225(b)(1) and (b)(2) [and] also authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Jennings*, 583 U.S. at 289.  The detention of non-criminal aliens already in the country is subject to the bond/conditional release hearing process. *Brito*, 22 F.4th at 244.  The detention of aliens seeking admission under § 1225 is not. *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 138 (2020); *Chanaguano Caiza*, No. 1:25-cv-00500-JAW, 2025 WL 3013081, at *6-8 (D. Me. Oct. 28, 2025) (denying habeas release to alien initially subject to § 1225 detention who was paroled for humanitarian reasons—lack of detention capacity—under § 1182, where parole was subject to reporting requirement and automatically expired within 60 days (applying 8 C.F.R. § 212.5(e)(1), (2) ("Parole of aliens into the United States"))).

Based on the statutory framework, the question is whether Petitioner's detention without a prompt bond hearing is consistent with the INA and the Due Process Clause.  I conclude that it is.  Under federal law, Petitioner has never been admitted into the United States and, instead, has been paroled under section 1182(d)(5) for a period of years subject to a condition that he be detained upon expiration of parole for purposes of attending to his removal (assuming his status did not favorably change in the interim).  During his parole, Petitioner had the privilege of remaining in the United States and applying for permanent resident status, but his application for change of status was recently denied.  And because Petitioner came to the United States in the context of a process that kept him in the status of an arriving alien seeking admission and has in the intervening years neither obtained a

more preferred status nor fallen off the administrative parole radar such that his status might reasonably be regarded as that of an unlawful entrant, he remains subject to detention under § 1225(b)(2) by express operation of § 1182(d)(5).[5] *See also* 8 C.F.R. § 212.5(e)(1)-(2).[6]

In opposition to this conclusion, Petitioner argues that he must be deemed to fall under section 1226, contrary to the command of sections 1182(d)(5) and 1225, because he was taken into custody pursuant to a warrant.[7] I am not convinced that that is a proper conclusion. Pursuant to the INA, Petitioner was a parolee subject to mandatory detention on expiration of his parole. The happenstance that INS took him into custody pursuant to a warrant should not have the talismanic effect of unwinding Petitioner's entire inspection, admission seeking, and parole history. Arrest pursuant to a warrant is to be preferred to summary arrest without one and the law should not erect obstacles for the INS that would discourage the use of warrants since they facilitate more orderly arrests.

---

[5] When I propose a scenario of an alien falling off the administrative radar, I have in mind aliens paroled under section 1182(d)(5) who have for many years carried on lives in the United States after the expiration of their parole. *See, e.g.*, *De Oliveira v. Joyce*, No. 2:25-CV-00291-LEW, 2025 WL 1826118 (D. Me. July 2, 2025) (bond hearing ordered where parole was authorized for one year but petitioner remained for eight years beyond parole expiration); *but see Chanaguano Caiza v. Scott*, No. 1:25-CV-00500-JAW, 2025 WL 3013081 (D. Me. Oct. 28, 2025) (habeas petition dismissed where petitioner was initially detained at the border but was paroled under § 1182(d)(5)(A), despite being at liberty for approximately three years after parole expiration).

[6] Under the regulation, there is still a prospect of parole for Petitioner. 8 C.F.R. § 212.5(e)(2)(i).

[7] "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Once arrested, the noncitizen is subject to discretionary detention pending his or her removal proceedings. *Id.* § 1226(a)(2) ("[T]he attorney general . . . may release the alien on bond . . . [or] conditional parole.").

Petitioner also argues that the status reversion language of section 1182(d)(5)(A) should not apply to him because he did not return and was not returned by the INS to custody "forthwith." *See* 8 U.S.C. § 1182(d)(5)(A) ("[S]uch parole of such alien shall not be regarded as an admission … and when the purposes of such parole shall, in the opinion of the Secretary of Homeland Security, have been served the alien shall forthwith return or be returned to the custody from which he was paroled …."). Petitioner's "forthwith" argument is not persuasive. Petitioner's parole status expired and he was returned to custody within three months of the expiration date. The timing of the return to custody also corresponded with the denial of his application for lawful permanent resident status. A three-month period is a reasonable period of time when one considers the burdens under which the INS operates. The term "forthwith" is presumably amenable to examination under a reasonableness standard. Furthermore, there is nothing to suggest that the term "forthwith" was used by Congress to confer any right or advantage on parolees. To the contrary, the language conveys the idea that the parolee is obligated to return to custody and, if that does not occur, to be returned.

Petitioner also argues that it is unfair that an SIV immigrant would receive disadvantageous treatment as compared to aliens who avoid inspection and enter the United States illegally. This is a legitimate point, since Petitioner's entry was lawfully facilitated by the United States. However, Petitioner has always been a participant in a special immigration program that has made his parole subject to revocation or expiration. The INS should not be compelled to run its parole programs according to the same rules that apply in the context of section 1226 pre-removal-order proceedings. *See Johnson v. Arteaga-*

10

*Martinez*, 596 U.S. 573, 582 (2022). Also, it is not necessarily the case that parole consideration is unavailable to Petitioner, albeit based on the existence of "urgent humanitarian reasons or significant public benefit" under 8 U.S.C. § 1182(d)(5)(A) rather than dangerousness or the risk of flight.

But is further parole or bond consideration mandatory in terms of the Due Process Clause? According to the weight of authority, at some point it is. According to the Fifth Amendment Due Process Clause: "No person shall . . . be deprived of life, liberty, or property without due process of law." An exercise of administrative discretion leading to indefinite detention in the absence of procedural protection, no less than a statute permitting it, "would raise a serious constitutional problem." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). But until it does, it is not the role of this Court to release Petitioner or dictate that the Federal Respondents observe procedures that Congress has not prescribed. *Cf. Arteaga-Martinez*, 596 U.S. at 582. At the same time, any reasonableness limitation will "turn on the individual circumstances presented by each detainee." *Reid v. Donelan*, 17 F.4th 1, 5 (1st Cir. 2021). An individualized inquiry is therefore needed.

The evaluation of administrative procedures for compliance with the Due Process Clause "is guided by the three-part balancing test articulated in *Mathews v. Eldridge*." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 27 (1st Cir. 2021) (citing 424 U.S. 319, 335). The *Mathews* factors are: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative

11

burdens that the additional or substitute procedural requirement would entail." *Id.* (quoting *Mathews*, 424 U.S. at 335). I address factors (1) and (3) before considering factor (2).

The private interest here is an interest in liberty. "Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *Foucha v. Louisiana,* 504 U.S. 71, 80 (1992). Procedural due process rules are designed not to prevent deprivation, but to ensure that any deprivation of a fundamental right is justified and not mistaken. *Hamdi v. Rumsfeld*, 542 U.S. 507, 530 (2004) (citing *Carey v. Piphus*, 435 U.S. 247, 259 (1978)). In reference to Petitioner, both liberty and detention have been the product of a special immigrant visa program in which Petitioner's suitability for admission to the United States was, in time, decided in the negative, despite preliminary vetting that cleared him for participation. Meanwhile, Petitioner has had years of liberty in the United States, during which time he has also enjoyed the company of and expanded his family. Until only recently, liberty was his condition. Petitioner has no criminal convictions here or abroad.

The government's interest appears to be one of adherence to a statutory detention scheme consistent with an agency determination that detention is mandatory, *see Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA Sept. 5, 2025), without consideration of the constitutional implications of prolonged detention. On the other hand, the record reveals certain unfavorable findings related to the recent denial of Petitioner's application for an adjustment of status to lawful permanent resident. I have no authority to review the findings but cannot disregard the possibility that they were factored into the decision to issue the arrest warrant. It is also the case that Petitioner is scheduled to appear before an

immigration judge on February 3, 2026. The Federal Respondents have not suggested that the immigration judge would review the custody determination at that time, but a failure to do so despite what could be a protracted pre-removal process would place Petitioner in better standing to obtain habeas relief in this Court, as far as the balance between the first and third *Mathews* factors is concerned.

The remaining factor concerns "the risk of an erroneous deprivation" of Plaintiff's interest in liberty as a consequence of the procedures actually employed, "and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. Plaintiff's loss of parole coincides with a decision to deny his application for an adjustment of status. That is not nothing in the scheme of procedural due process. On the other hand, even if an order of removal were already in place for Plaintiff, prolonged detention would be reviewable and subject to judicial relief on a habeas petition. Consequently, or presumably, there is a point by which the legality of prolonged detention will collapse under its own weight. But in the interim, in the context of a legislative scheme that presumes detention as the default condition, the deprivation is not yet proved erroneous for due process purposes. *See Jennings v. Rodriguez*, 583 U.S. 281, 300 (2018) ("[Excepting parole,] there are no *other* circumstances under which aliens detained under § 1225(b) may be released."). In fact, the Supreme Court has long taken the view that mandatory detention throughout the limited period of a removal proceeding is not a constitutional violation. *See Demore v. Kim*, 538 U.S. 510, 523 (2003) ("[T]his Court has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process."); *see*

*also Thuraissigiam*, 591 U.S. at 138 (2020); *Leng May Ma v. Barber*, 357 U.S. 185, 188-90 (1958).

**B.     Equal Protection**

The Fifth Amendment Due Process Clause encapsulates a guarantee of equal protection under the law. *Bolling v. Sharpe*, 347 U.S. 497, 499 (1954). Quoting remarks made by President Donald Trump in the aftermath of a recent deadly assault, including a statement that the administration "must now re-examine every single alien who has entered our country from Afghanistan," Petitioner claims his recent arrest and detention are the product of impermissible bias rather than an individualized assessment. Petition ¶¶ 34-35.[8] The event in question, the shooting of two National Guard members by an Afghan national, occurred on November 26, 2025.

Petitioner's application for change of status was denied and his Notice to Appear for removal proceedings was issued, on September 8, 2025, more than two months before the President's remarks. However, the warrant for his arrest issued on December 5, 2025, suggesting a connection. Nevertheless, I conclude that the record does not support a finding that Petitioner's arrest violated the Equal Protection Clause simply because it occurred after the President communicated his comments, at least not where Petitioner was

---

[8]     Petitioner quotes The White House (@whitehouse), INSTAGRAM, https://www.instagram.com/reel/DRi2H4BAE8h/ (last visited by Petitioner Dec. 6, 2025)). Petitioner also cites and quotes Hamed Aleaziz and Nicholas Nehamas, "Immigration Officials Target Afghans for Deportation in Wake of D.C. Shooting," THE NEW YORK TIMES, Dec. 2, 2025, https://www.nytimes.com/2025/12/02/us/politics/afghans-deportation-shooting.html (last visited Dec. 10, 2025) ("…the administration is particularly focused on refugees from Afghanistan. Agency field offices have been instructed to submit daily reports outlining how many Afghans are being removed, arrested and investigated…").

previously denied a change in status to permanent legal resident and was served with notice to appear for removal proceedings, and where Petitioner's character was called into question by administrative findings associated with the earlier denial of the status adjustment. On this record, I find the Government's position sufficient to justify Petitioner's arrest.

Alienage-based equal protection challenges are subject to rational basis review. *Mathews v. Diaz*, 426 U.S. 67, 78-84 (1976) ("statutory discrimination" between classes of aliens "allowing benefits to some aliens but not to others" is permissible).[9] Consequently, "[w]here there are 'plausible reasons' for [the Government's] action," judicial inquiry "is at an end." *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313-14 (1993) (quoting *United States Railroad Retirement Bd. v. Fritz*, 449 U.S. 166, 179 (1980)). I accept as adequate to overcome Petitioner's equal protection challenge the following plausible reasons offered by the Federal Respondents:

> There are plausible reasons for immigration authorities to apply increased scrutiny to Afghan nationals. It is reasonably conceivable, for example, that Afghan citizens who have lived through the past several decades of perpetual armed conflict in their nation may have engaged in activities warranting enforcement by immigration authorities. Direct military training and experience, too—although cited by Petitioner as a positive factor—may need

---

[9] The Court explained:

> The fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship or, indeed, to the conclusion that all aliens must be placed in a single homogeneous legal classification. For a host of constitutional and statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded to the other; and the class of aliens is itself a heterogeneous multitude of persons with a wide-ranging variety of ties to this country.

*Mathews v. Diaz*, 426 U.S. at 78–79 (footnotes omitted).

to be assessed for security and intelligence risks, as well as for past human rights abuses.  The inhospitable environment of Afghanistan may also provide a motive for its nationals to provide misleading information to forestall enforcement efforts by U.S. immigration authorities to return Afghan nationals to their country of origin.  *See* U.S. DEPT. OF STATE, "Afghanistan Travel Advisory," https://travel.state.gov/content/travel/en/traveladvisories/traveladvisories/afghanistan-advisory.html (last visited Dec. 12, 2025) (citing current conditions of "civil unrest, crime, terrorism, risk of wrongful detention, kidnapping, and limited health facilities").  Indeed, Petitioner's own case illustrates these concerns.  <u>While all of these points may be subject to genuine and thoughtful debate, rational basis review cedes such considerations to political rather than judicial processes</u>. *See Family Planning Ass'n of Maine v. Kennedy*, 1:25-cv-00364-LEW, 2025 WL 2591542, at *1 (D. Me. Sept. 8, 2025).

Return and Response at 18 (emphasis added).

## CONCLUSION

Given the, thus far, short duration of Petitioner's detention, I am not convinced that immediate release is warranted or that this Court should compel, let alone usurp, the conduct of a bond hearing process, as some other courts have done for petitioners with SIV status.  Accordingly, the Petition for writ of habeas corpus (ECF No. 1) and Emergency Motion (ECF No. 3) are DENIED and the matter is DISMISSED without a hearing.

The Clerk will maintain the seal on Petitioner's identity.  Accordingly, docket items 4 and 5 will be GRANTED.

SO ORDERED.

Dated this 22nd day of December, 2025.

/s/ Lance E. Walker
Chief U.S. District Judge